**FILED**

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

JUN 2 3 2021

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

SAMUEL SAN MIGUEL,
  Plaintiff,

v.

CIVIL ACTION NO._____

Greg Abbott, Texas Governor,
Marsha McLane, TCCO Executive Director
Michael Searcy, TCCO Operation Spec.,
Jessica Marsh, TCCO Deputy Dir.,
Wellpath Recovery Solutions (Wellpath)
Management Training Corporation (MTC),
  Defendants.

**1:21CV0566RP**

## COMPLAINT AND DEMAND FOR JURY TRIAL

### I. JURISDICTION & VENUE

1. This is a civil action authorized by 42 U.S.C. Section 1983 to redress the Deprivation, under color of state law, of Rights secured by the Constitution of the United States. The Court has jurisdiction under 28 U.S.C. Section 1331 and 1343(a)(3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C. sections 2201 and 2202. Plaintiff's claims for injunctive relief are authorized by 28 U.S.C. Section 2283 & 2284 and rule 65 of the Federal Rules of Civil Procedure.

2. The United States District Court for the Western District of Texas, is an appropriate venue under 28 U.S.C. Section 1391 (b) (1)(2) because it is where multiple Defendant's reside, and where multiple events giving rise to this claim occurred.

### II. PLAINTIFF

3. Plaintiff, Samuel San Miguel, is and was at all times mentioned herein an Involuntarily Civilly Committed Citizen in Texas. Since September 2015 San Miguel has been in total confinement at the Bill Clayton Detention Center, occupied by the TEXAS CIVIL COMMITMENT OFFICE (herein: TCCO), as the TEXAS CIVIL COMMITMENT CENTER (herein: TCCC), at 2600 South Sunset Ave. Littlefield, TX 79339.

### III. DEFENDANTS

4 Defendant Greg Abbott, (herein: Abbott), is the Governor of the State of Texas and as the highest executive officer of the State, Abbott is legally responsible for the longterm, wellknown purpose and effects of the statutes promulgated at his hand, that they comply with the Federal Constitution and for the wellknown custom and practices effectuated by State Agency's created by State Statutes. Abbott is legally responsible for Statute Chapter 841., of the Texas Health & Safety Code's Sexually Violent Predator Act' (SVPA) under which authority Plaintiff is civilly committed, and the TCCO the State Agency Created by the SVPA. Abbott is being sued in his Official Capacity as Governor

of the State of Texas and at all times mentioned herein acted Under Color of State Law. **(Abbott may be served with proper notice of this suit by Service of Summons and Complaint, at The State Capital Building in Austin Texas.)**

5.    Defendant **Marsha McLane, (herein: McLane)**, is the Executive Director of the TCCO, an agency of the State of Texas, as set forth in Chapter 841., of the Texas Health & Saftey Code's Sexually Violent Predator Act. (SVPA). McLane is legally responsible for the treatment and supervision, in its entire scope, of those civilly committed under the SVPA. She is legally responsible for the conditions of confinement subjected upon Plaintiff, and the Patients of the TCCC, which result from the overall policy, administrative decisions, and function of the TCCO, and the TCCC. McLane is legally responsible for the contracted care services provided to the TCCC Patients. McLane is being sued individually and in her official capacities and at all times mentioned herein McLane acted Under Color of State Law. **(McLane may be served with proper notice of this suit by Service of Summons and Complaint, at her office located at: 4616 West Howard Lane, building 2, suite 350, Austin, TX 78728)**

6.    Defendant **Michael Searcy (herein: Searcy)** was the Operation Specialist of the TCCO from September 2015 until October 2020. Searcy was legally responsible for the overall policy, staff, daily administration, and operation of the TCCO and TCCC. He is legally responsible for the contracted service of care provided to Plaintiff and the Patients at the TCCC during that time. Searcy is responsible for the conditions of confinement Plaintiff and the TCCC Patients were subjected to as the result of TCCO/TCCC policy during that time. Searcy was responsible for the care and wellbeing of the patients at the TCCC during his employment with the TCCO. Searcy is being sued in his individual capacity and at all times mentioned herein Searcy acted Under Color of State Law. **(Searcy may be served with proper notice of his suit by Service of Summons and Complaint, at his office located at: 4616 West Howard Lane, building 2 suite 350, Austin, TX 78728, or though the State of Texas's Attorney General's Office)**

7.    Defendant **Jessica Marsh (herein:Marsh)** is the Deputy Director of TCCO. Marsh was previously the TCCO General Counsel. Marsh is legally responsible for the overall policy, staff, daily administration, and operations of the TCCO and TCCC. Marsh is responsible for the conditions of confinement the TCCC patients are subjected to as the result of TCCO/TCCC policy. Marsh is legally responsible for the contracted service of care provided for the Patients at the TCCC. Marsh is legally responsible for the care and wellbeing of the patients at the TCCC. Marsh is being sued individually and in her official capacities, and at all times mentioned herein Marsh acted Under Color of State Law. **(Marsh may be served with proper notice of this suit by service of Summons and Complaint, at Her office located at: 4616 West Howard Lane, building 2, suite 350, Austin, TX 78728.)**

8.    Defendant **Wellpath Recovery Solutions (Wellpath) (suit commenced via Principle agent Gina Bison. (herein: Wellpath)** (formally Correct Care Recovery Solutions (CCRS) is a for profit private prison/treatment facility operating company which was under contract with TCCO to operate the TCCC from September 2015 though May 2019. Wellpath is legally responsible for the function, policy, and operation of the TCCC during that time, as well as the welling, and conditions of confinement and treatment in its entire scope which their policies subjected upon the Patients of the TCCC. During that time. Wellpath

2.

is being used as a corprate entity, in their individual capacity and at all times mentioned herein acted Under Color of State Law. **(Wellpath may be served via principle Agent Gina Bison, with proper notice of his suit, by Service of Summons and Complaint at via Certified Mail at : Wellpath LLC 1283 Murfreeboro Pike, Ste 500, Nashville, TN 37217)**

9.   Defendant **Management Training Corporation (Suit commenced via Principle Agent John Cochran) (herein: MTC)** is a for profit private prison company which began operating the TCCC on May 1st 2019, to the present. MTC is legally responsible for the function, policy and operation, of the TCCC and responsible for the wellbeing and conditions of confinement and treatment, in its entire scope, which their policies (approved by TCCO) subject upon the patients at the TCCC. MTC is being sued as a coporation, in their individual and official capacities and at all times mentioned herein acted Under Color of State Law. **(MTC may be served by service upon Principle Agent John Cochran, at his office at 2600 South Sunset Ave., Littlefield, TX 79339)**

## IV. FACTS

10.   Samuel San Miguel was homeless in Amarillo TX, in June 2002. After living between homes in Dumas and Amarillo, and staying at the Faith City Mission, he was on the streets addicted to drugs and alcohol. In late June, 2002, San Miguel met Terry Stone at Ellwood Park in Amarillo, and Stone agreed to give San Miguel a ride to Dumas so that he could pick up his Guitars, to pawn off for money to purchase drugs and alchol.

11.   Stone, his wife, six-year-old daughter, seven-year-old son and San Miguel traveled to Dumas and back with his guitars and some money recieved for an item he pawned at the EZ pawn in Dumas. Cocaine and alcohol were purchased with said funds and San Miguel stayed the remainder of the night at Stone's apartment abusing cocaine and alcohol with Stone and his Wife. The following day was the same as before except that Stone's thirteen-year-old came over to stay the night at the apartment as well.

12.   The following day Stone's thirteen-year-old daughter went home and told her aunt she had been sexually assaulted the night before by San Miguel. He was charged with three counts of Sexual Assault (one for each child). One of the charges was initially dropped and San Miguel received a thirteen year prison sentence in exchange for a plea of guilt on two charges of Aggravated Sexual Assault of a Child. The State of Texas sentenced San Miguel to 13 years in Prison, he completed his sentence day-for-day.

13.   Shortly before San Miguel was scheduled to be released from prison, the State of Texas filed a petition to have San Miguel civilly committed as a Sexually Violent Predator (SVP) under Ch. 841. Tex. H. & S. Code's (SVPA)ct. At the conclusion of a jury trial, the jury found that San Miguel suffers from a "behavior abnormality" (a mental illness/mental abnormality) which increases his likelihood to engage in a future act of sexual violence and ordered his involuntary civil commitment upon the completion of his prison term.

14.   The trial court rendered a final judgement adjudicating San Miguel to be a SVP under the statute and issued an order of civil commitment mandating San Miguel to outpatient treatment, and supervision until he is cured of his illness (his behavior abnormality changes) and he is no longer likely to

engage in a future unlawful sexual act. He was discharged from the Huntsville unit TDCJ-CID, Huntsville TX, and transferred to Travis County Jail, Austin TX to begins outpatient treatment on July 1, 2015.

15.   Plaintiff is considered "likely" to be a danger to others, as any Texas citizen may be considered "likely" to be a danger to others and civilly committed, see **Tex. Health & Saftey Code. Ann. § 574.035(a)(2)(B)** "is <u>LIKELY</u> to cause serious harm to others." -(Court-ordered extended inpatient mental health services: (CIVIL COMMITMENT), and **Tex. H & S Code Ann. § 574.034(a)(2)(B)** "is <u>LIKELY</u> to cause serious harm to others"- (Court-ordered temporary inpatient mental health services (Civil Commitment). Though people who commit serious Felonies <u>even Murders of their own childern</u>, are Civilly Committed for years in Texas mental institutions across the State, ONLY Plaintiff and others Civilly Committed _____ -." under the SVPA are given a specific title or label, and Sexually Violent Predator" is attached to Plaintiff;s name, used by the Courts, Media and the Defendants.

16.   San Miguel had previously pled guilty to 2 sex offences and the State of TX. punished him by depriving him of his Liberty, by locking him in Maximum Security Prison for 13 years of his life. The State punished him completely and did not offer or provide any type of "Treatment" for any "illnes" which makes him "likely" to commit another sex offence in the future, while he was in prison. The punishment and retribution of a 13 year prison sentence under the Criminal Process was the States chosen means to hold Plaintiff accountable for any crimes he may have committed against it. Plaintiff's life and liberty may not be jeopardized twice for the same crimes, see Fifth Amendment United States Constitution.

17   The States sole lawful justification for depriving San Miguel of his Liberty after he completed his prison sentence, and did not commit another crime, is and was his illness, that the State says he has and that this "illnes" makes him likely to be a future danger to others. The State Civilly Committed San Miguel pursuant to the (SVPA)ct (Ch. 841.)

18   The Stated Lawful Purpose of the Act is "long-term clinical treatment and public saftey" not punishment. Plaintiff's conditions of confinement may not amount to punishment due to the fact that he did not commit, nor was convicted of another crime after he discharged from prison. Plaintiff asserts that the conditions the state housed him in, in TDCJ Prison, are designed to puinish him as an offender who had broken the law. However the Defendants have subjected him to those same condidions and even worse restrictions for 5 years and 7 months now at the Texas Civil Commitment Center.

19.   It is well settled by the Supreme Court of the United States, that Plaintiff is entitled to the same Status and Treatment as any other Person Civilly Committed by the State. The High Court specifically said of the SVP civil commitment law in Kansas "We noted, however, that conditions within the unit were essentially the same as conditions for other involuntarily committed persons in mental hospitals." Seling v. Young, 331 U.S. 250 at, 261 (2001). The Supreme Court also stated that the Civil Commitment Statute in Kansas would not be said to be punitive where the State, among other things to those committed "afforded the same status as others who have been Civilly Committed" Kansas V. Hendricks, 521 U.S. 346 at, 638 (1997).

20.   The two Government intrests in TX's SVPA are: **"public saftey"** and **long-term treatment."** The **public saftey aspect** is satisfied by the 2 motion sensing razor wire fences, topped with concertina wire that surround the Bill Clayton Detention Center, the maximum security prison facility that is occupied as the Defendants labeled "treatment facility".

21.   The **long-term treatment aspect: i.e. THE GOVERNMENT'S SOLE LAWFUL INTEREST INSIDE THE TCCC FACILITY,** is as follows.: San Miguel has a Constitutional Right to individual treatment that will give him a reasonable opportunity to be cured of his illness and to improve his mental condition. San Miguel's Right to treatment "as one who the state says has a mental illness or abnormality" arises as a matter of Federal Law under the Due Process Clause of the Fourteenth Amendment of the Constitution of the United States of America. The only legitimate interest of the Defendants inside the TCCC facility is to cure San Miguel's illness, "hence TCCC's title" "Treatment Facility".

22.   San Miguel has a Liberty interests under the Due Process Clause of the Federal Constitution. These Liberty Interests include food, shelter, clothing, medical care, safety and freedom from bodily restraint. The Defendants violate Plaintiff's due process rights if they exorcise their power over Plaintiff effecting his Protected Liberty Interests in a manner that substantially departs from the accepted professional judgement, practice, or standards of which the Liberty Interest is protected. Plaintiff is entitled to more considerate treatment and conditions of confinement than "criminals" whose conditions of confinement are designed to punish. Plaintiff may not be housed in conditions of confinement that amount to punishment and this Substantive Right of his is protected by the Due Process Clause as well.

23.   The State (Defendants) violate Plaintiff's due process rights if they do not exorcise "Clinical Professional Judgement" when effectuating his civil commitment at the TCCC (i.e. implementing their policies which effect his environment, subject him to conditions of confinement, or allow or direct the TCOO-TCCC staff's interactions with him- so as to be sure to futher the governments intrests in curing his illnes). If the Defendants are not curing Plaintiff's illness then they are subjecting him to their power and control, "Arbitrarily", which is inferred by the Court as unlawful punishment according to the ground floor for permissive detention set by the Supreme Court. see Bell v. Wolfish, 441 U.S. 520 (1979) "Conversely, if a restriction or condition is not reasonably related to a legitimate goal-if it is arbitrary or purposeless- a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees." Id. at 539.

24.   Stated simply if the Defendant's policies and actions  are not curing Plaintiff's illnes, and providing him safety and care in a therapeutic manner then they are **"Arbitrary"** (**"arbitrary.** "1 According to notion or whim rather than according to law. Despotic; without reason. Fixed or arrived at through an exercise of will or by caprice, without consideration or adjustment with reference to principles, circumstances or significance." Ballentine's Law Dictionary, 3rd Edition.)

25.   If the Defendants policies and practices subject Plaintiff to more restrictive, harsh depravations, and punitive conditions, than even prison

inmates are subjected to, than the Defendants are violating his Rights under Federal Law as well. The Defendants may not simply violate Plaintiff's rights and say it is in the name of treatment because among other things The Supreme Court has said of as the ground floor for the conditions of confinement in which they subject upon innocent American Citizens "Of course, the mere invocation of a legitimate purpose will not justify particular restrictions and conditions of confinement amounting to punishment." Schall v. Martin, 467 U.S. 253 at, 269 (1984).

26.   Plaintiff San Miguel has been an involuntarily civilly committed patient at the TCCC since September 8, 2015. San Miguel has a long history of other psychological disorders that are actually recognized by the clinical community as mental disorders or mental illness. He is diagnosed with Bi-Polar disorder, anxiety, depression, and ADD/ADHD combined type. San Miguel is civilly committed by the Defendants at the TCCC because he had been adjudicated to be afflicted with a mental illness or mental abnormality, which the Legislature of the State of Texas had, in their discretion, titled a "Behavior Abnormality." The TCCC is a State funded and co-operated Clinical Treatment Facility, which houses patients whom the State has determined to be afflicted with a "behavior abnormality" which makes them "likely" to cause harm to others though a future unlawful sexual act.

27.   Upon completion of his prison term, San Miguel spent his first two months out of prison in Austin TX under civil commitment. Though only for a short time while in Austin he and 12 other patients would leave the Travis County Jail twice a week and be driven by cab, unattended, to downtown Austin for SOTP group therapy. He would go to the community health care clinic, HEB and other places for appointment and such, as scheduled by his Case Manager. This lasted until the last 2 weeks of August 2015, when all patients at the Travis Co. Jail were placed on Lockdown at the Jail.

28.   At this time, San Miguel was told by TCCO that he was being transferred to the TCCC, and that he would no longer be in "outpatient" treatment, but that he would be placed in "inpatient" treatment in a tiered treatment program, at a total confinement "clinical treatment facility". As around the same time of his release from prison Texas amended the (SVPA) passing S.B. 746, (signed by Defendant Abbott on June 17, 2015, completely overhauling Statute Ch. 841. TX Health & Saftey Code.) S.B. 746 created the Texas Civil Commitment Office (TCCO), replacing the former agency, Office of Violent Sex Offender Management (OVSOM).

29.   The former SVPA Civil Commitment Program was under scrutiny both publicly and legislatively, for inept administration, questionable treatement and a host of other legal issues being called, "beyond broken", by State Senator John Whitmire, who also believed the statute would eventually be ruled by "some court" as unconstitutional. This is according to an article published in June 2015, by the Houston Chronicle (see Ex. pgs. 25-26. Offenders Program has Flaws. By Mike Ward and Anita Hassan.) Multiple media articles have been published concerning the State's mishaps with SVPA statute Ch. 841. see(ex. pgs. 25-35).

30.   The State of Texas abruptly removed 210 Civilly Committed Sex Offenders from the Community and placed them in a Maximum Security Prison in

Littlefield, TX as the result of the State's Change of the SVPA in 2015. Those Civilly Committed were forced to loose their jobs, homes, and any other life or property they had acquired while Civilly Committed in TX. **No Civilly Committed person under the SVPA had committed another sex offence, or violated any legitimate state statute, prior to hem being rounded up and placed in total confinement at he prison in littlefield.** The depravation of 210 citizen's Life, Liberty and Property was effectuated by the Stroke of Defendant Abbott's pen, on June 17, 2015.

31.     Though the Defendant's offered a hearing to the patients prior to changing the final judgement order of their Civil Commitment Trial, from mandating "Outpatient" treatment to "Inpatient" treatment. The State did not provide legal counsel to the patients being totally deprived of their Liberty as the result of the hearings. The State did however provide multiple Attorneys for themselves to argue on their own behalf at the hearings. Multiple Patients simply signed a consent form to change their final judgement and enter the new Treatment Program. Plaintiff could not afford counsel, nor had he an understanding of the law at that time.

32.     One Civilly Committed patient **Alonzo May**, hired legal counsel to attend the hearing and refused to consent to ̗the change in his final judgement and was released from Civil Commitment as the result of the hearing. The Judge presiding (**Honorable P.K. Reiter**), denied the States's Motion to Amend May's final judgment, and thereby released him from civil commitment as the result of the hearings. Texas's Ninth Circuit Court of Appeals, Overturned his release and stated the following:

33.     See "In Re Commitment of May, 500 S.W.3d 515, 519; 2016 Tex App LEXIS 8058 (Tex. App. Beaumont, July 28, 2016) "After a hearing, on December 14, 2015, a visiting judge sitting in the 435th District Court ordered May's release from the civil commitment imposed on him by the judgement and order of civil commitment," The Appeals court states the findings of facts and conclusions of law of **The Honorable Judge Reiter:**

34.     "6. Although not having been convicted of new sex crimes or for that matter any crimes, committed persons such as Alonzo May were to begin tiered inpatient treatment in total confinement for an indeterminate period, historically much longer than a definite prison sentence. **7. The place of confinement, the Bill Clayton Detention Center or private prison at Littlefield Texas has two chain link fences topped by concertina wire around its perimeter and all the characteristics of a Texas Department of Criminal Justice prison facility.** 8. The confinement to which Alonzo May would be subjected if ordered into tiered inpatient treatment is substantively and substantially more oppressive than that required by the July 24, 2013 Order of Commitment. 9. There was no credible evidence presented that tiered inpatient treatment would provide better benefits to Alonzo May than outpatient treatment required by the July 24, 2013 Order of Commitment."

35.     The trial court also included two conclusions of law: (1) **"Texas Health and Safety Code Chapter 841 as amended by the 2015 senate Bill 746 fails to meet Constitutional muster in that the requisite involuntary commitment of Alonzo May pursuant thereto is, retroactive, punitive and a denial of Alonzo May's due process rights under the both Texas and U.S. Constitutions[,]"** and (2) "Therefore, Alonzo May shall be released from civil commitment

forthwith."" Id. 500 S.W. 3d 515 at 519-520. The State filed an emergency supersedeas motion which the Tex. App. Beaumont granted, and eight days later May was picked up at his home in Dallas TX, and placed in total confinement at the TCCC where he remains this day.

36.    Plaintiff aims to prove that the Honorable P.K Reiter, actually did what was right, and he was correct: The Texas Health and Safety Code Chapter 841 as amended by the 2015 Senate Bill 746 is not a "Civil" Statute, it is actually a "Criminal" Statute and therefore in violation of His Rights under the Fifth & Fourteenth Amendment of the Constitution of the United States of America... However,"IN THIS PLEADING, AS PROOF OF THE UNCONSTITUTIONALITY OF THE STATUTE, PLAINTIFF PRESENTS OBJECTIVE EVIDENCE OF THE ENTIRE LIFE OF THE STATUTE AS AMENDED 2015. **5 YEARS WORTH OF THE STATUTE'S PURPOSE AND EFFECT.**

37.    San Miguel's mention of the SVPA prior to S.B. 746, and the release of Alonzo May is to provide information in reference to the legislative history of the Act., in addition to respectfully informing the Honorable Court of his intentions of proving that in its entirety,[a]the statute from its conception in 1999 was and is a violation of Federal Law,[b]noncompliant with the demands of the Constitution of the United States of America.,[c]**was never intended to consider the welfare of the State or its citizens nor the poor victims of any sexual crime.** And[d]the State's intention of the statute was simply to lock,(sex offenders who have completed their prison time) back up in prison because they" didn't-get enough time the first go round", either by trial or plea bargain.

38.    That the State (Defendants) chose to use the Civil Process to accomplish what its meant for the Criminal Process alone, was explained very well by **"Judge Michael T. Seiler"**, speaking at the April 26, 2016 Texas Patriots PAC., as captured in (YOU TUBE VIDEO ENTITLED JUDGE MICHAEL T. SEILER STATE DISTRICT JUDGE, 435TH DISTRICT COURT SPEAKS AT THE TEXAS PATRIOTS PAC., as transcribed by Blue Ribbon Legal LLC..Ex. pgs. 1-17)

39.    **Seiler was the 435th District Judge for over 6 years, and as the 435th District Judge, He was the sole Judge who personally committed over 200 sex offenders in his court. Seiler also sentenced dozens of civilly committed patients to terms of up to life in prison, not for committing any crimes, but for violating minor rules of their civil commitment. This sentencing provision was the unconstitutional "catch" of the SVPA prior to S.B. 746. Which S.B 746., ironically brought every one under the act to the prison anyway.**

40.    Seiler mentions the Legislature's creation of the 435th District Court. see(**ex. pg. 3 lines3-8., transcription.** "In 2008, they established the 435th District Court. They put that court in Montgomery County and the 435th District Court is tasked with trying all of the individuals who are potentially considered to be sexually violent predators for the entire State of Texas"). While'a t' the Patriots PAC Seiler mentions; ("The sexually violent predator statistics, **since 1999, we've had 282 people been committed.** I've done about 200 of them, so I've done about 200 of them, so- I've been in office now for almost five years. It will be five years in June. And I've committed about 200 individuals." **ex. pg. 4 lines12-17 transcription)**

41.    Seiler clarifies that those civilly committed are not intended to make it out of any Halfway House and concedes that they are treated worse than the

# Texas Civil Commitment Office

## Step 1 Grievance Form

| | Official Use Only |
|---|---|
| Client Printed Name: | Grievance Number |
| Signature:                        Date: | Date Received        Date Due |
| Date of Issue: | |

**DESCRIPTION:** Summary of the incident or occurrence giving rise to the grievance or reason for the grievance. Include the date, time, names of staff involved, potential witnesses names, the location where the issue occurred, and any other relevant information (attach additional pages if necessary along with documents relevant to the issue).

**STEPS YOU HAVE TAKEN TO INFORMALLY RESOLVE THE ISSUE PRIOR TO FILING THE GRIEVANCE:**

**YOUR RECOMMENDATION TO RESOLVE THE ISSUE:**

TCCO-11-16D
(Rev. 03/17)

criminals who are being punished for their crimes at the same
facilities...("When you've committed, about 56 percent of the people are-
reside in state halfway houses. That should be full-time houses, its really
not a halfway house. Halfway houses encourage people to get out of halfway
houses. My sexually violent predator is not allowed to leave the halfway
house. They're monitored 24 hours a day seven days a week, 365 days a year
they don't go to the mall. They don't go to burger king. They stay at the
halfway house. I've personally toured three of these halfway houses and they
are, I'm told, stricter than prison.. ex. pgs.4, line25 -pg. 5, lines1-11
transcription)

42.   Seiler was considered a scandal, making prejudice comments about Sex
Offenders to the Jury during civil proceedings, and comments in public that
could in the least infer biased. see(ex. pgs. 17(a)- 17(c)., March 1015 Prison
Legal News article, TEXAS SEX OFFENDER OVERSIGHT AGENCY FACES INVESTIGATION,
CALLS FOR REFORM, by Matt Clarke. ), in which Senator Whitmire, says about
Seiler's Court ("From what I now know, it appears we have a court that's
showing strong indications it's out of control and is legally jeopardizing the
good purpose for why this program was established." Senator Whitmire remarked.
"To have one judge overseeing all the cases is not appropriate. its clear this
guy is acting very bizarre and without a doubt is violating the constitutional
rights of defendants. That has to stop." ex. pg. 17(c))

43.   Whitmire called for an investigation by the Commission on Judical
Conduct on December 31, 2015 according to Prison Legal News. see(ex. pg.
17(c)). Plaintiff asserts that Seiler was just doing what he was encouraged to
do by the State, as part of their scheme. In February 2016 he was allowed to
step down from the bench to avoid criminal prosecution for soliciting former
jurors for votes.

44.   At the Patriots PAC, Seiler mentions speaking with the legislature; ("I
told the legislature just last session, if you want to take the jury trial
right away and make it a judge (inaudible) which is how the Feds have it set
up, that I can get through all 35,000 sex offenders pretty quickly so..." ex.
pg. 10 lines7-11 transcription). Upon information and belief, Sen. Whitmire
was present at the referred session. Seiler then mentions his role in
sending sex offenders back to prison for breaking minor rules of civil
commitment ("the legislature allows regardless of whether violation of
commitment occurs they can be tried in the 435th District Court, so you can
actually break my law in El Paso, they're going to try you in Montgomery
County because El Paso, this attorney's office gives like two- and three-,
four year sentences, even dismisses them, and Montgomery County is- I mean,
life, life, life. ex. pg. 15 lines10-17 transcription)

45.   !!!IMPORTANT!!!.   ..Seiler bluntly states the truth and the real reason
for the civil commitment statute; see(Ex. pg. 8 lines5-21 transcription.,
"This was the first- the reason for the statute was a guy named Wesly Wane
Miller, and Wesley Wane Miller was a high school quarterback and in Tarrant
county and the star quaterback on the football team and after he graduates
from high school he's going to go off and play football at one of our two big
major institutions. And the cheerleaders from the high school squad started
getting sexually assaulted. I think on the fourth one  he ended up murdering
her, and this is before they had DNA so this is sort of eyewitnesses and a
scratch marks on him and some blood roughly matched up and he got convicted

# Texas Civil Commitment Office

## Step 1 Grievance Form

| | Official Use Only |
|---|---|
| Client Printed Name: | Grievance Number |
| Signature:                          Date: | |
| Date of Issue: | Date Received        Date Due |

DESCRIPTION: Summary of the incident or occurrence giving rise to the grievance or reason for the grievance. Include the date, time, names of staff involved, potential witnesses names, the location where the issue occurred, and any other relevant information (attach additional pages if necessary along with documents relevant to the issue).

STEPS YOU HAVE TAKEN TO INFORMALLY RESOLVE THE ISSUE PRIOR TO FILING THE GRIEVANCE:

YOUR RECOMMENDATION TO RESOLVE THE ISSUE:

TCCO-11-16D
(Rev. 03/17)

and got 20 years in prison and - yea. Not charged (inaudible). **In Montgomery County, HE WOULD GET MORE, this is one of the reasons the statute is in Montgomery County.").**

46,     For the Honorable Judge who personally spoke to the Legislature of the State, and Civilly Committed hundreds of sex offenders to say this concerning a "civil commitment statue" truly brings life to what Justice Kennedy said concurring in the Kansas v. Hendricks Opinion, "If the civil system is used simply to impose punishment after the State makes an improvident plea bargain on the criminal side, then it is not performing its proper function". Id., at 521 U.S. 346, 373..."If, However, civil confinement was to become a mechanism for retribution or general deterrence, our precedents would not suffice to validate it." Id. Seiler stepped down from the bench in February 2016. Upon information and belief Seiler was simply doing what the State encouraged, and allowed Him to do.

47.     Concerning the change to the Statue in 2015, Plaintiff waved his right to a hearing, and consented to the entry of "inpatient treatment" on his commitment order and for what will be 6 years in September 2021, San Miguel has been confined in a Maximum Security Prison under a falsely labeled "Civil"; Criminal law, that is punishing him for a crime he has yet to commit. However he has been treated worse in the TCCC Prison than in TDCJ Prison. Defendant Abbott's Promulgated Law has blessed McLane, Searcy, Marsh, Wellpath, and MTC, to confine Plaintiff, in their own personal compound and subject Plaintiff to whatever depravation they choose at their whims, treating Humans who are hated because they are sex offenders to conditions that are considered cruel and unusual if subjected upon Prison inmates.

48.     Also in reference to the Legislative Text and History or the Statute is who wrote the Text. The "architect" of the reformed SVPA statute in (2015), was ("Senator John Whitmire, 'Chairman of the Senate Criminal Justice Committee.", according to the "Houston Chronicle, ex. pg. 25). TCCO, the agency which the 2015 SVPA statute created operates a "Clinical Treatment Facility" that is ran as a High Security Prison where the Patients have no rights and are treated unequally for years. Upon information and belief, only 5 people are in the community, in the final tier of treatment (tier 5.).

49.     The Facility is operated by former DOC/TDCJ/BOP employees, and the Community Supervision patients are subjected to in Tier 5., under TCCO have restrictions which are more restrictive than any prisoner of the State would face on Parole upon information and belief. Plaintiff's claim that the SVPA statute is a Criminal Statute and not Civil is the fact that Marsha McLane was appointed by the State to be the Executive Director of the TCCO. Defendant McLane was an employee and administrative official the TDCJ Pardons and Parole Division for 30 years.

50. San Miguel firmly asserts that, with this Complaint and through this Civil Action::He is not seeking more considerate treatment and conditions at the TCCC (He is ENTITLED to this and has been since the first day he entered the facility). Through this Complaint, by stating the violations of his rights in multiplicity, and describing the conditions He's been subjected to at the hands of the Defendants, and the SVPA, His relief sought is seeking

**Notice of Unreturned MPN for October, 2020**

**Date:**_____ 11/12/2020


**Resident Name:**___ **San Miguel, Samuel**_____

**ID Number:**_____ **05687251**___

**Housing Area:**_____ **B1**____


You had previously been sent a copy of your MPN for October, 2020 to review and return.  As of this date, Thursday November 11th, 2020, it has not yet been received. Please review and return your MPN to your therapist, Mr. Gonzales, with your feedback and signature by Tuesday, November 17th, 2020.  Once it has been returned and finalized, you will be provided with a copy.

liability of the defendants for their callousness towards his rights, and for CH. 841. the SVPA, to be properly considered <u>as a criminal statute</u>. San Miguel complains of multiple effects of Statute Ch. 841 that he is and has been subjected to for the past 5 ½ years.

## SECTION A.  UNLAWFUL GOVERNMENT ACTIONS WHICH ARE THE PURPOSE AND THE EFFECT OF THE SVPA AND DEFENDANTS INCLUDE BUT ARE NOT LIMITED TO:

51.     **[1]Former Texas Department of Criminal Justice Officials operating the State Agency TCCO, and exercising unbridled discretion over the TCCC facility, implementing policies according to penological interests departing from Clinical Professional Judgement:**  I.e., Ch. 841. TX Health & safety Code. (as amended by S.B. 746) was created by Senator John Whitmire, who was "Chairman of the Senate Criminal Justice Committee). The state agency created by said statute- TCCO's top executive officials are decades' veterans of TDCJ- <u>Marsha McLane,</u> decades TDCJ Pardons & Paroles and<u> Michael Searcy </u>(TCCO top official for 5 years) was employed with TDCJ for 30 years.

52.     The Contracted Company's formally Wellpath now MTC, who co-operate the TCCC Facility, top officials are former Department of Corrections employees. The Facility's Administrators "wardens", Security Directors, and Captains of Security- have primarily been and are former TDCJ or BOP wardens and guards.: e.g. <u>Tina Cover</u> (FA. TCCC 2016) ex TDCJ warden, upon information and belief <u>Chris Parton</u> (FA TCCC 2018) Former Dept. of Corrections South Carolina, Grieg Shirley (FA TCCC 2019) ex top official at a BOP prison under MTC, David Bowers_(Assis. FA/ Security Dir. TCCC 2018-2019) Ex TDCJ Major, John Cochran, (current FA.) years BOP corrections, Wayne Smoker (current Assistant FA.) 28 years with TDCJ, Jason Heaton (chief of Security 2020) 30 years TDCJ.

53.     **[2]These TDCJ employees arbitrarily creating and enforcing a "Treatment Program Policy" at the TCCC, which is a punitive confinement scheme in which Patients are subjected to different levels of punitive confinement for years, not for misbehavior but for how much of the Textbook Curriculum they have finished and their treatment tier.**  It seems McLane has decided punishments and deprivations can cure Plaintiff's illness, (see **ex. Pgs. 86-95.,** PC500-02 TIERED HOUSING PROVISION OF CARE Policy, was subjected upon the TCCC patients by McLane and Searcy 2017.) (this policy created a punitive confinement scheme in which patients live unequally for years while stuck in the same tiers. **No clinical reasoning or due process was provided when McLane and Searcy began to strip patients of their privileges, liberty, and property to implement the scheme,** and in fact inmates after finishing often long prison

sentences are brought to McLane and Searcy's TCCC, and placed in more punitive conditions, with less privileges than the prison they discharged from.)

54.    **[3]A State Agency (TCCO) unlawfully endowed by statute the authority to charge Patients any arbitrary amount of their money they so choose without due process. claiming "cost recovery"- defraying the cost of their Civil Commitment.** (I.e. McLane may arbitrarily call whatever she so chooses, belonging to the patient, "income" for the purposes of said "cost recovery. E.g. McLane has forced patients (to either pay or be punished for not paying 33% of their: SSI benefits, military pension/retirement, small financial gifts sent to them from family and friends, and **even food that is sent to them from outside the facility in a "care package".**) Punitive sanctions are imposed on any patient who does not pay TCCO their fee. NO OTHER CIVILLY COMMITTED PERSONS IN THE STATE IS EXTORTED IN THIS MANNER. This practice includes:

55.    **[4]Patients being charged a 33% fee on purchased goods and property sent to them in care packages from outside family and friends, or being deprived of said property,** i.e. San Miguel must pay 33% of the total price of a care package sent him from his Mom, or Defendants will not let him have it. San Miguel asserts that it is absurd to claim food sent from his family as income, and that McLane should not have that kind of arbitrary authority. (**ex. Pgs. 36-41** TCCO Policy 3.38- approval and processing of packages policy, and, **ex. Pg. 54**- memorandum from defendant bowers ordering the receipt for said package, sent first or package will not be released to the patient.)

56.    **[5]Charging a 33% fee on any monetary gifts sent to patients from outside family and friends. or be assessed punitive sanctions until fee is paid. "was applied retroactively, (2016).** I.e. Upon the opening of the facility monetary gifts received from outside family and friends were not subject to the 33% fee. McLane one day arbitrarily decided to consider these gifts as income for purposes of Cost recovery (the 33% fee) No Due Process was provided. E.g. San Miguel was then forced to pay $33.00, because of a $100.00 money order he had received from his Mother 12 months prior to McLane's arbitrary decision or face punishment.

57.    **[6]Patients being charged 200% higher prices for commissary (canteen) items than what a TDCJ prison inmate pays.** E.g. (1 Ramon noodle soup- TDCJ .30 cents, TCCC .80 cents, and many other outrageous prices on food items. *See* (**ex. Pgs. 59-60:** TDCJ commissary price list, and **ex. Pgs. 61-62:** TCCC commissary price list). The high commissary prices coupled with the 33% fee on money sent him leaves Plaintiff deprived of food and other property because it's too expensive.

58.    **[7]Disfavored groups of patients being charged 21. Cents a minute for telephone calls and a tax deposit fee to purchase phone minutes due to being forced to use one phone vender ICS (inmate calling solutions),** TDCJ prison inmates pay 6

cents a minute for phone calls. Due to the expensive rates on phone calls San Miguel goes for months or years without associating with His Brothers, Sister, Uncle, and Cousins because it is too costly and therefore a burden. Plaintiff's Mother and Grandmother are forced to budget in order to afford phone minutes, and then can only speak briefly. **(Tier 3 & 4 patients are allowed to purchase a " cell phone" which upon information and belief" are able to purchase a $50.00 dollar a month unlimited calling plan. So while some Patients have to use the prison phone mounted on the wall, others can carry theirs in their pockets and pay less (all while inside this maximum security prison.) CIVILLY COMMITTED PERSONS IN STATE HOSPITALS ARE NOT CHARGED FOR PHONE CALLS AND NO OTHER CITIZENS ARE DETAINED BY THE STATE IN A FACILITY FOR YEARS WHILE SOME GET TO PAY LESS FOR PHONE CALLS AND OTHERS DON'T.**


59.     **[8]TCCC patients are punished in accordance with policies that are more harsh and restrictive than the policies that punish TDCJ prions inmates. i.e. TCCC Patients are assessed punitive sanctions for facility rule violations which are 300% longer in duration, than sanctions that are imposed on a TDCJ inmate for substantially worse (real) prison violations,** e.g. commissary restriction for one major rule violation... TDCJ 0-45 days...TCCC mandatory 6-months. (see **Ex. Pg. 38;** J Eligibility Requirements Guilty finding at a behavior management hearing (Major Offence) Length of Restriction 6 month package restriction. Marsha McLane 's signature is on the policy)

60.     **[9]TCCO confine Civilly Committed Patients under the same Punitive Disciplinary rules as TDCJ Prison inmates for years, subjecting patients to punitive prison time instead of a therapeutic environment to cure the "illness" they supposedly have:** I.e. same policies which govern those who are being punished by the state for their crimes govern plaintiff and all TCCC patients. TCCO/TCCC simply copied TDCJ's Prison Disciplinary Offences, and implemented them at the TCCC see (ex. **Pgs. 96-97.**, LEVEL / OFFENSES (TDC)/ **pgs. 98-99.**, LEVEL RULE VIOLATIONS (TCCC), **pgs. 100-101.** LEVEL 2 OFFENSES (TDC)/ pgs. 102-103.LEVEL 2 RULE VIOLATIONS (TCCC)). TCCO/TCCC changed a word here or there from TDCJ's wordings (E.g. TDCJ 1.0 Escape -**ex. Pg., 96.,** TCCC 1.0 Unauthorized Absence [Absconding]); TDCJ 4.0 Threatening to inflict harm, physical or otherwise, on an officer or any person who is not an offender **ex. Pg. 97.,** TCCC 4.0 Threatening to inflict harm. Physical or otherwise, on any person who *is*not a SVP Client. **Ex. pg. 98)**

61.     The Rules TDCJ uses to govern offenders who are doing hard time in prison for their crimes is the same rules Defendants use to govern the Patients of the TCCC. This contributes to the Punitive atmosphere at the TCCC, and cannot cure an illness and does not have a place in a therapeutic environment and is a departure from Clinical

Professional Judgement. NO OTHER CIVILLY COMMITTED PERSONS IN THE STATE ARE SIMPLY LOCKED IN PRISON AND SUBJECT TO PRISON POLICY. STATE HOSPITALS OR ASSISTED LIVING CENTERS ARE NOT PUNISHED IN THIS MANNER FOR YEARS. The Defendants know or should have known that subjecting Plaintiff to the same punitive conditions that the States subjects upon TDCJ prison inmates, violates Plaintiff's Rights.

62.     **[10]TCCO/TCCC punishing civilly committed patients in a clinical treatment facility, with up to 90-days punitive seclusion -SMU" wing restriction" (24 hours a day locked in a prison cell.) for single rule violations.** (upon information and belief, TDCJ no longer uses Solitary Confinement as a punitive sanction on TDCJ inmates.) The Defendants have sanctioned over 60 Patients with 24 hours a day Punitive Seclusions for terms of up to 90 days for single facility rule violations. TDCJ inmates could only receive 15 days solitary confinement at a time regardless of the offence. Plaintiff will show the Policy for SMU and multiple Declarations of Patients who the Defendants have punished with 90 days SMU punitive seclusion, for violating single facility rules.

63.     **[11]Though punished and confined as if patients were just TDCJ prison inmates, the facility Due Process procedure provided to Patients before they are punished for violating a facility rule (titled: Behavior Management Review (BMR)), provides less procedural protections than a TDCJ prison inmate receives before being punished, and is in every way in its entirety is a violation of every patient's (whose ever been on the facility from day one until now).** Procedural Due Process Rights. Facts demonstrating this are as follows: Since the prison opened its doors as he TCCC, any staff member may write any "Incident Report" (IR) claiming or alleging any type of behavior or rule violation committed by San Miguel, and the accuser is not required to tell him about it, and may simply load/scan the IR, on to his record/file where it is then considered as factual.

64.     See (**ex. pg. 55.**: TCCC grievance plaintiff submitted complaining of an IR that was placed on his record, which he didn't 't know about, and was of what another inmate said that San Miguel supposedly said to him about a female staff member letting him masturbate in her presence.) (**ex. pg., 56**; an excerpt from a TCCC monthly Clinical report concerning what another patient said San Miguel said was brought up at a staffing.) (**Ex. pg. 57.**, an answered communication form (CF) # 18-7190, from his case manager (CM) Chris Salinas complaining of an IR he did not know about.) and (**ex. pg. 58.;** CF to his then CM Danial Rakes, wanting to know when he got off the 6-month package restriction, and mentioning 2 IRS that were written, for leaving the unit without an escort, and for running in the hallway answered by Security Director Chris Woods.)

65.     Or TCCC, at the discretion of Security, may elect to send the IR through the BMR process before punishing the patient. From July 18, 2018 August 2019 Plaintiff received about 10 BMR cases. The Due Process Involved the IR being written, Bowers (Security Chief/ Director) receiving the IRs, and after a brief investigation deciding whether or not the IR should "proceed to BMR" or not, (a clinical professional's judgment was excluded at this stage of the review), and then the same official is the chairman of the BMR "hearing committee" which determines guilt and punishment, (which is a grievous loss or an extreme depravation of liberty, '90 days punitive isolation') TCCO has an official on each BMR hearing, and therefore involved in each extremely punitive sanction as well.

66.     Hundreds of TCCC patients have been through this same process. **(ex. pgs. 72-83.**; show examples of TCCO's Due Process provided for the TCCC patients population.) (First the IR is written; **ex. pgs. 72, 76, 80.**); (Bowers reviews The IR, (excludes Clinical judgement), chooses whether or not to proceed to BMR **ex, pgs. 73, 77, 82**); (then is on the Committee to determine guilt or innocence alongside TCCO Kingston, at each BMR hearing **ex. pgs. 75, 77, 82**). Plaintiff asserts that Bowers has cussed multiple patients during the hearing process calling them pieces of shit, and yelling at them. Plaintiff will submit a declaration of a patient, who has a Clinical Therapist signature on a document which attest to this fact.

67.     Most significantly: EACH AND EVERY INCEDENT REORT PLAINTIFF RECIEVES (DUE PROCESS PROVIDED OR NOT) IS PLACED IN HIS BI-ANNUAL REVIEW AND ULTIMATELY GOES BEFORE THE 435TH DISTRICT COURT JUDGE, WHO WILL THEN DETERMINE SAN MIGUEL'S LIBERTY. Plaintiff's last Bi-Annual review contained 23 IRS, that he did not know about or receive any due process for, and that 80% of the accusers no longer work for TCCC. either fired or quit.

68.     **[12]Groups of patients being allowed to live at a higher standard of living. and being treated better than others confined at the same facility FOR YEARS.**

69.     **[13] The depriving of groups of Patient's Liberties, Privileges. and Property, to create for them a "lower" standard of living. in order to provide the other Groups their "higher" standard of living. (without due process or clinical professional judgement)** I.e., Tier 3 & 4 patients are allowed all the property and privileges of the facility, allowed to work, order food from restaurants, and other perks, yet did nothing to earn a single privilege. McLane and Searcy, "Former TDCJ employees" (who have the final authority for the approval of policies on the TCCC) along with WellPath, and MTC, simply created and enforced their, (Tiered Housing Provision of Care Policy **ex. pgs. 86-95. (2017)**), which arbitrarily deprived the tier I & 2

patients of their privileges liberties and property, without providing clinical reasoning or process of any kind and soly upon their punitive whims.

70.     Therefore, for the past over 5 years, San Miguel and about 280 patients have been living at the TCCC, watching the same group of people use a refrigerator, eat out, wear new cloths, and buy video games, and buy enough food not to go hungry, yet he and they are not able to do the same and no one goes home. Patients have remained in the same tier in treatment for years. Some patients who cannot read or have learning disorders are confined in a more punitive environment (punished harsher) simply because they cannot read and do the book work, and not for bad behavior. Miguel asserts that McLane is concerned with creating a punitive living structure, to fit the unconstitutional statute and has violated federal law in the process (less restrictive housing is in the community).

71.     **[14]Involuntarily Civilly Committed Patients receiving a Lower Standard of medical and dental care than the standard of care provided for TDCJ prison inmates and for other citizens who are civilly committed in the State.** The Defendants have not provided him any dental care since he has been in total confinement at the TCCC for over 5 years. E. g, San Miguel has needed his front tooth filled since he arrived on the facility, TCCO/TCCC have refused to have it filled, San Miguel has spoken to multiple TCCO administrative officials, and TCCC Medical Staff concerning his dental work and has submitted multiple medical requests over the years since he has been confined at the TCCC.  TDCJ filled this tooth while San Miguel was in prison years ago, but fell out in his last few months of prison. TDCJ will clean inmate's teeth as well, TCCO will not provide this for TCCC Patients. (see **ex. pg. 63.;** health care request dated 8-10-17); (ex. **pg. 63(a);** TCCC Grievance dated 3-29-17 stating they will only extract teeth); and (**ex pgs. 64-67**, many communication forms from plaintiff to his CM asking for a Job so he can have his tooth fixed) TCCO requires plaintiff to pay for his dental care though he is not able to meet his needs due to being in total confinement.

72.     **[15]Patients being forced to wear a GPS leg monitor under the penalty of a felony offence, and pay for said service, though they are not in the community, but confined at the TCCC a maximum security prison:** The Defendants placing a GPS Leg Monitor on Plaintiff after he has finished his PUNITIVE PRISON SENTENCE "as if he somehow became more dangerous after he finished his time" does not serve a legitimate rational government interest. Also the SVPA specifically states that this requirement is used as a punitive sanction for those the Defendant's arbitrarily deem to be on "disciplinary statutes." *See* **Sec. 841.082. Commitment Requirements. Text(a)(4)(A) submit to tracking under a particular type of tracking service, if the person: (a)(4)(A)(ii) is in one of the two most restrictive tiers of treatment, as determined by the office; (iii) is on disciplinary status, as determined by the office.**

73.   **[16]The (SVPA) subjects Plaintiff and all others deemed to have the mental disorder under the act, to a commitment standard and to a more stringent standard of release than those applicable to all others civilly committed in the state who are likely to cause harm due to a mental disorder, (charged with offenses or not, regardless of what the "serious harm they are likely cause is) and thus condemn him in effect to permanent institutionalization without the showing required for commitment or the opportunity for release afforded to all others,** *see.* **TEX. HEALTH & SAFETY CODE. § 574.066(f). Violating The Equal Protection Clause of the United States Constitution.**

74.   San Miguel will continue to suffer at the uncontrolled hand of Defendant Marsha McLane, while under the Statute promulgated by Defendant Abbott, and continue to be unlawfully confined in conditions of confinement that amount to unlawful punishment and his mental condition will worsen if not provided prompt relief.

75.   Plaintiff San Miguel has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless this court grant the declaratory and injunctive relief which plaintiff seeks.

## V. LEGAL CLAIMS

76.   Plaintiff realleges the facts stated in paragraphs 10-75 in the Complaint.

77.   **Claim 1.** As described in the Complaint and demonstrated through documentary evidence submitted herewith, Chapter 841. Of the Texas Health and Safety Code, the (SVPA) is so punitive in purpose and effect that it negates the state's intention to deem it a Civil Statute, and is a Criminal Statute not Civil.  The SVPA is therefore in violation of the Constitution of the United States of America. **Therefore, Defendants Greg Abbott, Marsha McLane, Michael Searcy, Jessica Marsh, Wellpath Recovery Solutions, and Management Training Corporation, (for the respective time of their personal involvement) have subjected Plaintiff to 5 years 10 months of unlawful punitive confinement in a maximum security prison, in violation of his Due Process Rights Under the Fifth, and Fourteenth Amendment of the Constitution of the United States of America.**

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Samuel San Miguel respectfully prays that this court enter
judgement:

78.    **1**. Granting Plaintiff a **DECLARATION**: that;
      **i.** Chapter 841. Of the Texas Health and Safety Code is so punitive in purpose and
effect that it may not permissibly be deemed a Civil Statute and is hereby deemed a
criminal statute, and in violation of the Constitution of the United States of America.

      **ii.** The Acts and omissions described herein violate Plaintiff's Rights under the
Constitution of the United States of America.

      **iii.** The Defendants may no longer confine, or detain Samuel San Miguel or any
Citizen under the Authority of Statue Ch. 841. Texas Health and Safety Code.

79.    **2**. Issuing a **PERMANENT INJUNCTION:** ordering the Defendants;
      **I.** To release Plaintiff Samuel San Miguel from the custody and confinement of
the Texas Civil Commitment Center.

      **ii.** To no longer detain or confine any Citizen of the United States under the
Authority of Ch. 841. Of the Texas Health and Safety Code, nor enforce any further
conditions or requirements stipulated by said Statute.

80.    **3**. Granting San Miguel compensatory damages in the amount of **$500,000
dollars,** against **Defendants McLane, Searcy, Marsh, Wellpath, and MTC** jointly
and severally, as the relief demanded in the complaint for the 5 years 10 months of
unlawful confinement as stated in, **Claim 1.**

## VERIFICATION

      I Samuel San Miguel Declare under the penalty of perjury that the forgoing is
true and correct.  Executed at Littlefield, TX 79339 on May 26, 2021.

**SAMUEL SAN MIGUEL PRO-SE**

Very Respectfully Submitted

**SAMUEL SAN MIGUEL PRO-SE**